### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| TINKA VASSILEVA, | |
| Plaintiff, | |
| v. | No. 19-cv-04064 |
| CITY OF CHICAGO, | |
| Defendant. | Judge Franklin U. Valderrama |

### MEMORANDUM OPINION AND ORDER

Plaintiff Tinka Vassileva (Vassileva), a Filtration Engineer (FE) for the City of Chicago (the City) brings this lawsuit[1] against the City alleging violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a) *et seq.*; national origin and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and retaliation for filing administrative charges and *Vassileva I* under Title VII. R. 1, Compl.[2] Before the Court is the City's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. R. 83, Mot. Summ. J. For the reasons stated below, the Court grants the motion for summary judgment.

---

[1]This is Vassileva's second lawsuit against the City. The first-filed lawsuit is currently pending in front of the Honorable Ronald A. Guzman, Case No. 18-cv-4595 (*Vassileva I*). The Court refers to the instant lawsuit as *Vassileva II*, as appropriate.

[2]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

## Background

### I.    Local Rule 56.1 Statements and Responses

As an initial matter, the Court must address Vassileva's response to the City's Local Rule 56.1 statement of material facts and Vassileva's purported statement of additional material facts. R. 101 at 1, Pl.'s Resp. DSOF; R. 101 at 38, PSOAF.[3] When "a party moves for summary judgment in the Northern District of Illinois, it must submit a memorandum of law, a short statement of undisputed material facts [(L.R. 56.1 Statement)], and copies of documents (and other materials) that demonstrate the existence of those facts." *ABC Acquisition Co., LLC v. AIP Prod. Corp.*, 2020 WL 4607247, at *7 (N.D. Ill. Aug. 11, 2020) (citing N.D. Ill. Local R. 56.1(a)). The Local Rule 56.1 statement must cite to specific pages or paragraphs of the documents and materials in the record. *Id.* (citing *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004)).

Under Local Rule 56.1(b) and (e), the nonmovant must counter with a response to the separate statement of facts, and either admit each fact, or, "[t]o dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." N.D. Ill. Local R. 56.1(e)(2)–(3). "Asserted facts may be deemed admitted if not

---

[3]Citations to the parties' Local Rule 56.1 Statements of Material Facts are identified as follows: "DSOF" for the City's Statement of Undisputed Material Facts (R. 85); "Pl.'s Resp. DSOF" for Vassileva's Response to the City's Statement of Undisputed Material Facts (R. 101 at 1); "PSOAF" for Vassileva's Additional Facts Requiring Denial of Summary Judgment (R. 101 at 38); and "City's Resp. PSOAF" for the City's Response to Vassileva's Statement of Additional Material Facts (R. 107). Vassileva has filed one document containing both her Response to the City's Statement of Undisputed Material Facts and her Statement of Additional Facts (R. 101).

controverted with specific citations to evidentiary material." *Id.*; *see Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."); *see also Daniels v. Janca*, 2019 WL 2772525, at *1–2 (N.D. Ill. July 2, 2019). If the non-moving party asserts additional facts not included in the moving party's statement of facts, the non-moving party is to file a statement of additional material facts "that attaches any cited evidentiary material not attached to the [moving party's statement of facts] or the non-moving party's response [thereto]." N.D. Ill. Local R. 56.1(b)(3). The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019). Local Rule 56.1 "aims to make summary-judgment decisionmaking manageable for courts. "*Id.* at 415.

As the City points out in its Reply, many of Vassileva's denials to the City's statement of material facts fail to cite to any evidentiary material that controverts the asserted fact. R. 108, Reply at 6; *see* Pl.'s Resp. DSOF ¶¶ 61, 70, 76–77. Many of Vassileva's responses are also evasive and do not controvert the City's facts. Pl.'s Resp. DSOF ¶¶ 11, 20, 22, 24, 25, 38, 43–46, 58–60, 62, 64, 75. Further, certain denials contain improper argument. *Id.* ¶¶ 20–22, 32–33, 37–40, 45. In several instances, Vassileva improperly attempts to introduce additional facts in her purported denials of the City's facts. Pl.'s Resp. DSOF ¶¶ 5–6, 9–16, 18, 21–22, 24–25, 32–35, 37–40, 43–46, 48, 51–53, 55, 57, 58–64, 70, 72, 74, 76.

3

As a result, where Vassileva failed to respond to certain facts by offering admissible evidence of her own, the Court accepts as true the facts set forth in the City's Local Rule 56.1 statement "to the extent th[ose] facts [a]re supported by admissible and docketed evidence." *Kreg*, 919 F.3d at 411 (internal quotation marks omitted). The Court also will not consider any legal arguments or legal conclusions made in Vassileva's response to the City's statement of material facts. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008) ("[i]t is inappropriate to make legal arguments in a Rule 56.1 statement of facts"); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1018 (N.D. Ill. 2018) (collecting cases disregarding or affirming the decision to disregard argumentative statements of fact). The Court strikes non-responsive additional facts from Vassileva's response to the City's facts. *Hare v. Zitek*, 414 F. Supp. 2d 834, 851 (N.D. Ill. 2005) (striking argumentative and non-responsive responses to statement of facts).

Additionally, as highlighted by the City, Vassileva, in her Response to the motion for summary judgment, frequently fails to cite to *any* facts from the record, and does not include any citation to the record after page seven of her Response. R. 100, Resp. at 7–15. As a result, the Court is left to guess at whether the assertion in Vassileva's Response brief is supported by any fact in the record. *See id.* A district court "cannot be expected to search through the entire record for evidence that may support a party's contention; a party must point to specific evidence that creates a genuine issue of material fact for trial." *Compania Administradora de Recuperacion v. Titan, Int'l., Inc.*, 533 F.3d 555, 562 (7th Cir. 2008). As recognized in *Hampton v.*

*County of Cook*, a plaintiff's "failure [to cite a statement of facts in a brief] puts an undue burden on the court to sift through mounds of paper to determine whether the record supports plaintiff's characterization of events." 2020 WL 6381366, at *1 (N.D. Ill. Oct. 31, 2020) (considering only plaintiff's factual assertions from plaintiff's Rule 56.1 statement that are supported by the record).

Vassileva's failure to comply with Local Rule 56.1 places an undue burden on this Court in trying to discern whether the "facts" contained in Vassileva's Response are, in fact, supported by anything in the record. Accordingly, the Court will only consider factual assertions from Vassileva's Response to the extent they are supported by proper citation to the record. *See also Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021) (affirming summary judgment and denying plaintiff's evidentiary challenges where district court struck new facts asserted by plaintiff in his (1) response to the employer's asserted facts, and (2) response brief opposing summary judgment, because district courts may enforce the local rules "strictly, but reasonably").

Further, throughout her Response to the City's statement of facts, and in support of her own statement of additional facts, Vassileva cites to a Declaration she filed as an Exhibit to her summary judgment filings. R. 95-2, Plaintiff's Ex. 7, Vassileva Decl. To the extent Vassileva's Declaration includes statements that lack a proper foundation for an assertion, or rely upon hearsay, the Court will not consider those statements. Vassileva Decl. ¶¶ 15, 17, 20, 21, 23, 28, 42, 43; *see, e.g.*, *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (finding portions of an affidavit not

based on personal knowledge to be speculative and lacking in foundation) (citing *Joseph P. Caulfield & Assocs., Inc. v. Litho Prods., Inc.*, 155 F.3d 883, 888 (7th Cir. 1998) (Affidavit testimony "that was necessarily speculative and lacking in foundation ... is insufficient.")).

However, to the extent that Vassileva has properly cited and authenticated statements of fact, the Court will consider them.

## II. *Vassileva I*, *Vassileva II*, and Claim Splitting

As a preliminary matter, the City argues that Vassileva is improperly engaging in claim splitting in this lawsuit. R. 84, Memo. Summ. J. at 14–18. To provide some context for this argument, the Court outlines the claims of *Vassileva I* and the instant action.

### a. Claims in *Vassileva I*

On July 2, 2018, Vassileva filed *Vassileva I* against the City alleging that the City discriminated against her based on her sex, age, and national origin when it did not allow her to "Act Up" as an FE III in 2018; did not allow her to attend training on February 26, 2018; and failed to promote her to FE V in November 2016 and December 2017. *Vassileva v. City of Chicago*, 2019 WL 5085717, at *4 (N.D. Ill. Oct. 10, 2019). "Acting Up" occurs when an "employee is directed to, and does perform or is accountable for substantially all the responsibilities of a higher-graded, covered Class" or job title within the same class of positions, *i.e.*, a FE II Acting Up to a FE III. DSOF ¶ 40. Vassileva further alleged that the City discriminated against her because of her sex and national origin by docking her for one day's pay in January

6

2017, and that the City retaliated against her for filing administrative charges with the Illinois Department of Human Rights (IDHR) by failing to allow her to Act Up, by failing to post a FE V vacancy, and by failing to train her. *Id.* at *6.

The City moved for summary judgment on all claims in *Vassileva I* on April 9, 2019. Case No. 18-cv-4595, R. 37, City's Mot. for Summ. J. in *Vassileva I*. Two months later, and a month prior to filing her response opposing summary judgment, Vassileva filed this lawsuit (R. 1). Case No. 18-cv-4595, R. 52, Vassileva's Resp. to City's Mot. for Summ. J. in *Vassileva I*.

On October 10, 2019, the *Vassileva I* court granted in part and denied in part the City's motion for summary judgment. *Vassileva v. City of Chicago*, 2019 WL 5085717 (N.D. Ill. Oct. 10, 2019). In so ruling, that court granted summary judgment to the City on Vassileva's retaliation claims,[4] discrimination claim on being docked one-day's pay, and failure to promote claim. *Id.* The court denied the City's summary judgment motion regarding Vassileva's failure to obtain approval for Acting Up claim, holding that "[v]iewing the evidence in a light most favorable to Plaintiff, she has provided sufficient facts from which a jury could conclude that she had been the victim of sex, age, and national origin discrimination relating to Defendant's failing

---

[4]The court construed Vassileva's allegation of the City pulling her out of training on February 28, 2018 as an allegation of retaliation, and held that Vassileva waived the argument of retaliation in her response. Addressing the allegation substantively, the court also held that Vassileva could not survive summary judgment because suspicious timing alone was insufficient to establish retaliation, and Vassileva failed to refute that the decisionmaker did not know about her protected activity, in any event. *Vassileva*, 2019 WL 5085717 at *6, n. 8.

to approve her to act up." *Id.* at *5. That remaining claim in *Vassileva I* is scheduled for trial on February 12, 2024. Case No. 18-cv-4595, R. 148, Minute Entry.

### b. Claims In *Vassileva II*

The parties agree that Vassileva's allegations in this case concern events occurring after March 2018. Pl.'s Resp. DSOF ¶ 77; Resp. at 15; Reply at 3. The parties also agree on Vassileva's claims in this case, including national origin, sex, and age discrimination and retaliation for filing IDHR charges and *Vassileva I*, and, specifically: (1) a failed promotion to FE V in 2018; (2) a failed promotion to FE IV in 2019; (3) denial of FE III Acting Up opportunities from March 2018 – January 2019; (4) denial of FE III overtime from March 2018 – present; and (5) a written reprimand on June 6, 2018. Resp. DSOF ¶ 78.[5] In briefing the motion, the parties also submitted facts that relate to Vassileva's promotion to FE III in March 2019, which this Court will consider only as it impacts the analysis of the failure to promote claim for FE V in 2019. *E.g.*, Memo. Summ. J. at 5; Resp. 8–9.

### c. Claim Splitting

As Vassileva admits, her claims before March of 2018 are the subject of *Vassileva I.* Pl.'s Resp. DSOF ¶ 77. Nevertheless, in her Response, Vassileva brings

---

[5]To the extent Vassileva includes additional allegations in her FAC that she does not advance in her Response to the City's Motion, the Court will not consider them. *See, e.g., A&C Constr. & Installation, Co. WLL v. Zurich Am. Ins. Co.*, 963 F.3d 705, 709 (7th Cir. 2020) (failure to introduce evidence or advance arguments during summary judgment proceedings results in waiver).

in allegations relating to *Vassileva I*, despite acknowledging the timeframe and relevant claims in this matter.[6] *See*, *e.g.*, Resp. at 9–14; Pl.'s Resp. DSOF ¶¶ 77–78.

The City argues that Vassileva is claim splitting certain claims by bringing claims relating to the City's decision denying her from Acting Up as an FE III in February 2018 in this matter, *e.g.*, denial of FE III Acting Up opportunities and overtime from March 2018 – present. Memo. Summ. J. at 14–16. In response, Vassileva states "the truth of the matter is that the court in *Vassileva I*, with the essential agreement of the parties, found that the only claims that would be considered in that case were those prior to March 2018. Plaintiff had no choice but to proceed in *Vassileva II* for those acts of discrimination occurring after March 2018." Resp. at 15. Thus, the parties agree, again, on the scope of the claims in this case.

A suit is duplicative if the "claims, parties, and available relief do not significantly differ between the two actions." *Scholz v. U.S.*, 18 F.4th 941, 951 (7th Cir. 2021) (internal citations omitted). Where a plaintiff brings a suit arising from the same transaction or events underlying a prior lawsuit, claim splitting has occurred. *Id.* To evaluate claim splitting, the Court looks to the (1) identity of the parties and (2) identity of the causes of action in the lawsuits. *Id.* Unlike claim

---

[6]Relatedly, Vassileva includes a litany of alleged past wrongs in terms of her career with the City and other failed promotions in her Response. However, before this Court is the employment actions from March 1, 2018 and after. Pl.'s Resp. DSOF ¶ 77. Accordingly, the Court will not consider those allegations concerning past actions, which are time-barred. *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 723 (7th Cir. 2004) ("Any discrete discriminatory acts that fall outside the statute of limitations are time-barred even though they may relate to other discrete acts that fall within the statute of limitations.").

preclusion, claim splitting does not require a final judgment on the merits in the first filed lawsuit. *Id.*

Vassileva has sued the City in *Vassileva I* and *II*, and the identity of the parties in both lawsuits is the same. Moreover, in *Vassileva I* she asserts a claim of discrimination or retaliation against the City for its denial of FE III Acting Up in February 2018, and damages resulting from that decision. Here, Vassileva brings a claim of discrimination or retaliation against the City for its denial of FE III Acting Up Opportunities after February 2018, and denial of overtime with respect to FE III Acting Up Opportunities after February 2018, on the basis that she was excluded from Acting Up as an FE III in February 2018. Pl.'s Resp. DSOF ¶ 78. The City's decision to exclude Vassileva from Acting Up as an FE III in February 2018 is a claim in *Vassileva I*. Thus, although Vassileva has framed her claims slightly differently in this action, her claims that are derivative of the claim in *Vassileva I* of the City's denial of FE III Acting Up in February 2018 are barred by the doctrine of claim splitting. *Scholz*, 18 F.4th at 953–954 (internal citations omitted) (finding plaintiff's second filed suit barred by claim splitting where it contained substantially similar allegations across the same time period of the prior-filed suit, and where plaintiff was not permitted to "take another bite at the apple").

Further, to the extent Vassileva is confused and includes claims from prior to March 2018 in this matter, which she affirmatively agrees are the subject of *Vassileva I*, the Court will not consider them. *See id.* For example, Vassileva includes argument that she was denied training in February 2018, however, that claim was before Judge

Guzman, and the Court will not allow Vassileva to split her claim by re-evaluating that claim in this matter. *Cf.* PSOAF ¶¶ 34–40 *with Vassileva*, 2019 WL 5085717 at *3.

Finally, in this matter Vassileva re-alleges stray remarks (without a description of when the remark was made, who was present, or other pertinent details) made by various supervisors which she alleged in *Vassileva I* in her PSOAF ¶¶ 38–40. All of the stray remarks Vassileva alleges in her PSOAF were previously alleged in *Vassileva I*, and were considered by the court in its decision on the City's motion for summary judgment in that matter. *Vassileva*, 2019 WL 5085717 at *5; *see* Pl.'s Resp. DSOF ¶ 47. In this case, Vassileva has not identified stray remarks from any supervisors (or other personnel) in the period that concerns this lawsuit (March 2018 – present) except alleged comments made by Yadi Babapour (Iranian, male, 68) in or around April 2018 *regarding the February 2018 decision denying her Acting Up*, which she also previously alleged in *Vassileva I*, and which remains the subject of *Vassileva I. See* PSOAF ¶ 39; Vassileva, 2019 WL 5085717, at *5. In this matter, Vassileva also alleges Babapour made a comment that "some women prefer just to stay home" at an unspecified date and time in 2018, and that in January 2019 Babapour allegedly said to Vassileva "why don't you do what other engineers are doing, stupid." Pl.'s Resp. DSOF ¶ 48. However, Vassileva has not made any allegation that these purported comments were related to any adverse action where Babapour was a decisionmaker, or were made close in time to any adverse action alleged in this matter. *See* Pl.'s Resp. DSOF ¶ 68. Thus, Vassileva has not included

allegations that any stray remarks relate to the claims pending in this lawsuit, and therefore the Court will not consider Vassileva's re-alleged stray remarks relating to her *Vassileva I* claims.

### III. Material Facts

The following facts are set forth favorably to Vassileva, the non-movant, as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003). While the Court draws all reasonable inferences from the facts in Vassileva's favor, the Court does not "necessarily vouch[] for their accuracy." *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015) (citation omitted); *see also Knopick v. Jayco, Inc.*, 895 F.3d 525, 527 (7th Cir. 2018) (citation omitted) ("Given this summary judgment lens, we do not vouch for the objective truth of all of these facts."). This background section details all material undisputed facts and notes where facts are disputed, to the extent the disputed facts are supported by record evidence. As detailed in Section I, *supra*, the Court will not consider denials of material facts where such denials are not supported by evidence.

#### a. Vassileva's Background and Employment with the City

Vassileva is a 56-year-old woman from Bulgaria. DSOF ¶ 1. She is a current City of Chicago employee. *Id.* Vassileva has a Master's Degree in Chemical Engineering, Bachelor's Degree in Chemical Engineering, and a Bachelor's Degree in pediatric nursing. PSOAF ¶ 1. Vassileva also holds a Public Water Operative License

12

Class A from the Environmental Protection Agency, and a certificate in project management from DeVry University. *Id.* ¶ 2.

With the exception of a brief layoff, Vassileva worked as a FE II for the City's Department of Water Management ("DWM") from approximately July 1, 2002 through June 30, 2019. DSOF ¶ 2. On July 1, 2019, at 54-years-old, Vassileva was promoted to FE III. Pl.'s Resp. DSOF ¶ 2. Vassileva has worked in the Mechanical, Instrumentation, Operations, and Chemical Inventory sections. PSOAF ¶ 4. She is a member of the American Federation of State, County and Municipal Employees (AFSCME) Local Council 31, Unit 4. Pl.'s Resp. Pl.'s Resp. DSOF ¶ 2.

Vassileva has had a number of supervisors throughout her employment: FE V Babapour; Engineer of Water Purification Ed Salinas (Mexican, male, 56); Deputy Commissioner John Pope (American, male, 53); and Managing Deputy Commissioner Alan Stark (American, male, 57). Pl.'s Resp. DSOF ¶¶ 7–8.

### b. Background of DWM's Bureau of Water Supply

The DWM is responsible for managing and supplying nearly 1 billion gallons of drinking water to Chicago residents and to 120 suburbs. DSOF ¶ 3. The Bureau of Water Supply (BWS) operates two water purification plants: (1) the Jardine Water Purification Plant (JWPP) and (2) the Sawyer Water Purification Plant (SWPP). The plants purify water from Lake Michigan, which involves drawing in water, removing impurities, filtering the water, chemically treating it, and transmitting the clean water to the City's pumping stations. *Id.* ¶ 5.

The City's Filtration Engineers are responsible for the daily operations of the JWPP and range from FE II – FE V. DSOF ¶ 11. The FE II position is entry level, and each higher-level FE position requires more experience, training, and skills. *Id.* The City contends that FE IIs do not supervise other employees, however, Vassileva disputes this fact based on her personal experience as an FE II by identifying examples of times she has supervised other employees in that role. Pl.'s Resp. DSOF ¶ 11; PSOAF ¶ 17. The City further contends that FE IIIs, FE IVs, and FE Vs supervise subordinate FEs as part of their essential job functions. DSOF ¶¶ 11–13.

### i. FE V Promotion (June 2018)

Martin Wise, the City's Department of Human Resources Recruiter, was responsible for reviewing applications for the FE V position and creating a referral list of applicants. *Id.* ¶¶ 19–20. In processing applications for the FE V position, Wise deemed all FE IIs unqualified and ineligible to interview for the FE V position. *Id.* ¶¶ 20, 23–24. This included Vassileva and two other FE IIs. *Id.* The City's reason for finding the FE IIs ineligible was that pursuant to Department of Human Resources rules, the City only counted supervisory experience performed while in a position that supervises as an essential job function toward the one year minimum, and that FE IIs do not supervise as an essential job function. *Id.* ¶ 25. The candidates selected by Wise for interviews were all FE IVs at the time of their applications and had been in the FE IV role for a significant period of time, and the individual promoted into the role was an FE III from 1998 – 2015, at which time he became an FE IV. *Id.* ¶ 27.

Vassileva states that Wise permitted her to interview for a FE V position in 2016, and that the qualifications with respect to training and experience listed for the FE V position in 2018 were identical. PSOAF ¶ 16. Accordingly, Vassileva asserts that Wise's reasons for finding she was not qualified for the FE V position in 2018 were false. *Id.* ¶ 18.

Vassileva acknowledges that the individuals that Wise determined met minimum qualifications for the position all held FE IV positions and were older than Vassileva. Pl.'s Resp. DSOF ¶ 20. At the time, Jacek Wroblewski was an FE IV (age 54, male, unknown national origin), David Keon was an FE IV (age 54, male, unknown national origin), and Chamoon Anawes was an FE IV (age 56, male, unknown national origin), when Vassileva was an FE II and 53 years old at the time of the application. *Id.* Vassileva does not challenge the veracity of the contents of the referral list prepared by Wise, except to improperly speculate, without citation to admissible evidence, that Wise "intentionally omitted Plaintiff from the list although aware that she met the minimum qualifications." *Id.* Of the candidates selected for interviews, the most senior candidate, Wroblewski, was selected to fill the one available vacancy. DSOF ¶ 27. It is undisputed that Wroblewski had more seniority than Vassileva based on their hire dates. Pl.'s Resp. DSOF ¶¶ 2, 27. It is also uncontested that Wroblewski, Keon, and Anawes were deemed "pre-qualified candidates" by Wise, and that pre-qualified candidates are hired in order of seniority. *Id.* ¶¶ 20–21, 27.

### ii. FE III Promotion (March 2019)

In 2019 Vassileva applied for and was selected to interview for a FE III vacancy. DSOF ¶ 33. Seven eligible candidates interviewed for the position. *Id.* Vassileva and two other candidates, Matthew Matti (male, 38) and Syed Raheem (male, 66) were hired and started working as FE IIIs on July 1, 2019. *Id.*

The four other candidates that interviewed submitted "bid waivers" and waived their selection for an FE III position. *Id.* ¶ 34. On the bid waiver, each of those candidates indicated, in their own words, that they would like to remain eligible for other job opportunities in the next six months, therefore taking themselves out of consideration for the FE III positions. *Id.* Pursuant to the relevant ASFCME contract, "a successful bidder may not bid for another Employer determined permanent vacancy for six (6) months." *Id.*

Vassileva states that the interviewer, Sharon Jackson, shared with these applicants that FE IV positions may be available, and she did not share that information with Vassileva. PSOAF ¶ 24. Vassileva contends she would have waived her selection for an FE III position had she been provided with this information. *Id.*

### iii. FE V Promotion (June 2018)

On July 3, 2019 the City posted a bid announcement for six FE IV positions. DSOF ¶ 36. Wise reviewed applications from 13 individuals, which included Vassileva, Matti, and Raheem, and created a list of eligible candidates. *Id.* ¶¶ 37–38. Vassileva, Matti, and Raheem, pursuant to the AFSCME contract provisions on bidding, were not deemed eligible for the FE IV positions by Wise because they had

16

successfully bid for the FE III position within six months of submitting the bids for FE IV position. *Id.*

### iv. Acting Up Opportunities (March 2018 – January 2019)

"Acting Up" is "an employment action where an employee is directed to, and does perform, or is held accountable for, substantially all of the responsibilities of a higher-graded [job title]." *Id.* ¶ 40. For an employee to be eligible to "act up," they must have the present ability to perform the duties of the job title. *Id.* For City employees that want to "act up," they submit an annual request. *Id.* ¶ 42.

In February 2018, Salinas reviewed Acting Up requests by FEs to determine Acting Up eligibility for the remainder of 2018. *Id.* ¶¶ 7, 44. Salinas determined that Vassileva and Matti were ineligible for Act Up as FE IIIs in 2018. *Id.* ¶¶ 44–45, 79. BWS used the April 2018 Acting Up list until January 2019. *Id.* ¶ 46.

As discussed in Section II(c), *supra*, the denial of Vassileva's Acting Up in February 2018 is the remaining claim in *Vassileva I. Id.* ¶ 77. BWS did not review Acting Up eligibility again until December 2018. *Id.* ¶ 46. At that point, both Vassileva and Matti were deemed eligible to begin Acting Up as FE IIIs. *Id.*

### v. Overtime (March 2018 – Present)

Vassileva's overtime claim also relates to the City's decision that Vassileva was ineligible to Act Up as FE III in February 2018, and she was therefore not included on the FE III overtime list until she was deemed eligible to Act Up beginning in January 2019. *Id.* ¶¶ 44–46, 51. Vassileva was placed on the FE III callout list beginning on January 25, 2019, but was not permitted to Act Up as an FE III prior

to that date because an FE cannot be on the FE III callout list unless they are deemed qualified to Act Up as an FE III. *Id.* ¶¶ 51–53. Vassileva did not identify any days since January 2019 that she alleges she was unfairly denied overtime, thus placing her overtime claim squarely as a result of the City's denial of her FE III Acting Up eligibility in February 2018. *Id.* ¶ 52.

### vi. Written Reprimand (June 6, 2018)

On June 6, 2018, Vassileva was issued a written reprimand for insubordination. *Id.* ¶ 54. The reason for the written reprimand was Vassileva's refusal to leave a training session held on February 26, 2018. *Id.* ¶ 54. Vassileva's claim that the City had discriminated against her when she was asked to leave the training is the subject of *Vassileva I. Id.* ¶ 77; *Vassileva*, 2019 WL 5085717 at *4.

### c. Administrative Charges

Vassileva has filed several administrative charges alleging discrimination against the City. Pl.'s Resp. DSOF ¶ 69. For purposes of this the present motion for summary judgment, the relevant charge is that filed on June 11, 2018, which Vassileva attached to her Amended Complaint. R. 10-1, Charge of Discrimination. In her charge, Vassileva alleged discrimination based on national origin (Bulgarian), age, and sex, as well as retaliation. *Id.*

Wise, on the other hand, testified that he was not aware of Vassileva's IDHR charges or lawsuits, or internal complaints to DWM, until he was notified of the April 16, 2019 fact-finding conference for the June 2018 charge in approximately March 2019. *Id.* ¶ 75. Vassileva does not dispute this with any record evidence, instead

speculating that Wise "was most likely aware," which this Court necessarily disregards as unsupported. *See* Pl.'s Resp. DSOF ¶ 75.

Importantly, the Court will only consider events occurring from March 2018 onward, as Vassileva is not advancing any hostile work environment claim, and has pled discrete acts of employment discrimination. *Lucas*, 367 F.3d at 723.[7]

Therefore, Vassileva's remaining claims in this lawsuit include national origin and sex discrimination claims under Title VII, retaliation under Title VII, and a claim under the ADEA based on the above actions. The City's motion for summary judgment is before the Court. Mot. Summ. J.

### Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 256. "The mere existence of a scintilla of evidence in

---

[7]The previous court dismissed Vassileva's hostile work environment claim. R. 20, Minute Entry of Judge Gary Feinerman.

support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936 (7th Cir. 2022) (internal quotation marks and citations omitted). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

## Analysis

Vassileva alleges that the City discriminated against her on the basis of her national origin, sex, and age when it failed to promote her to FE V in 2018, failed to promote her to FE IV in 2019, denied her FE III Acting Up opportunities between March 2018 and January 2019, denied her FE III overtime from March 2018 to the present, and issued a written reprimand on June 6, 2018. Pl.'s Resp. DSOF ¶ 78; FAC Count II. Vassileva further alleges that the City retaliated against her for filing charges of discrimination and filing *Vassileva I*. Pl.'s Resp. DSOF ¶ 78; FAC Count I.

### A. Discrimination Based On Age, National Origin, or Sex (Count II)

Vassileva styled her discrimination claim based on age, national origin, and sex as one claim brought under Title VII. FAC Count II. Vassileva's discrimination claim, to the extent it is brought based on an age claim, is analyzed under the ADEA, and not Title VII. However, the Seventh Circuit has instructed that the same overall

20

analysis applies to claims brought under Title VII and the ADEA. *Gray v. Arrow Elecs., Inc.*, 2019 WL 1399945, at *3 (N.D. Ill. Mar. 28, 2019) (citing *David v. Bd. of Tr. of Cmty. Coll. Dist. No., 508*, 846 F.3d 216, 225 (7th Cir. 2017) and *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016)). For that reason, this Court analyzes Vassileva's age claim under the same framework as her Title VII claims based on national origin and gender. *See id.*

The ADEA and Title VII make it unlawful for an employer to take adverse employment action against an individual because of the individual's age, national origin, sex, or other protected characteristic. A plaintiff can prove a discrimination claim under either statute using direct or indirect method of proof. *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1157 (7th Cir. 2014). In recent years, however, the Seventh Circuit has moved away from—while not abandoning completely—these two methods, instead instructing that, "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence. Evidence is evidence." *Ortiz*, 834 F.3d at 765. The ultimate question, then, is whether there is evidence that "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.*; *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019) (assessing the evidence in an ADEA claim by applying *Ortiz*).

To survive summary judgment, Vassileva must adduce evidence suggesting that her protected characteristic was a reason for the adverse employment action. *See id.*[8]

Vassileva does not identify direct evidence of discrimination based on her age, national origin, or sex in the employment actions or decisions she brings in this action, and for this reason the Court analyzes her claims using the familiar burden-shifting *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Rooney v. Koch Air, LLC*, 410 F.3d 376, 380 (7th Cir. 2005). Under that framework, to establish a *prima facie* case of discrimination, a plaintiff must show that: (1) she was in a protected class; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated, substantially younger, male, or non-Bulgarian employees were treated more favorably. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771–72 (7th Cir. 2002); *see also Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005).

If the plaintiff meets that burden, then the employer must "set forth a legitimate nondiscriminatory reason for the adverse employment action which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment actions." *Nichols v. Southern Illinois University-Edwardsville*, 510 F. 3d 772, 783 (7th Cir. 2007). "If the employer satisfies its burden, the burden shifts back to the plaintiff to prove that the proffered reason was pretextual." *Walker v. Glickman*, 241 F.3d 884, 889 (7th Cir. 2001). Pretext is defined

---

[8]For an age discrimination claim, the standard is even higher, and plaintiff must establish that "but for his age, the adverse action would not have occurred." *Phillipson v. Wolf*, 831 F. App'x 212, 216 (7th Cir. 2020) (internal citations omitted).

as "a dishonest explanation, a lie, rather than an oddity or an error." *Sweatt v. Union Pacific R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015). To establish pretext, the plaintiff must show either that the employer was motivated by a discriminatory reason or that the proffered reason is "unworthy of credence." *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 675–676 (7th Cir. 2003).

An adverse employment action under the ADEA, or under Title VII, is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Chaudry v. Nucor Steel-Indiana*, 546 F.3d 832, 838 (7th Cir. 2008) (internal quotations and citation omitted); *see also Duncan v. Thorek Meml. Hosp.*, 784 F. Supp. 2d 910, 920 (N.D. Ill. 2011).

The Court analyzes each action challenged by Vassileva below.

### a. Failure to Promote (FE V – 2018)

To establish a *prima facie* case for failure to promote, Vassileva must produce evidence that (1) she is a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the City promoted someone outside of the protected class who was not better qualified for the position, or who had similar or lesser qualifications. *Outley v. City of Chicago*, 354 F. Supp. 3d 847, 863 (N.D. Ill. 2019). It is undisputed Vassileva was a member of a protected class, and was rejected for the FE V position, however, Vassileva has failed to produce evidence that she was qualified for the position or that the individual hired for the position was not better qualified/had similar or lesser qualifications. *See id.*

23

Although Vassileva describes, in detail, circumstances surrounding her lack of promotions, Vassileva fails to point to any evidence supporting a discriminatory motive relating to the City's failing to promote her. Vassileva's conjecture that she should have been eligible for promotions but was not based on the City's explanation that her FE level she held at the time (FE II) rendered her ineligible, does not transform that decision on her eligibility to one based on a discriminatory motive.

Vassileva does not dispute that Wise received and processed applications for the FE V position in 2018, and essentially screened applicants to create a bid list. Pl.'s Resp. DSOF ¶¶ 19–20. Nor does Vassileva dispute that Wise put together a referral list of the applicants. *Id.* Instead, Vassileva contends that Wise incorrectly found Vassileva not to meet the minimum qualifications for the position. *Id.* ¶ 20.

However, the City, in its discretion, is able to set its own eligibility standards subject to its rules and the relevant Collective Bargaining Agreements. In its discretion, the City, through Wise, determined that all FE IIs that applied for the position, including Vassileva, did not meet the minimum requirements for the FE V position, in part because FE IIs were entry level and did not supervise employees as an essential job function. DSOF ¶¶ 11, 23–24. That the City may have had different criteria for eligibility for this FE position in the past is of no consequence.[9] Further, that Wise previously determined Vassileva was qualified for a FE V position in

---

[9]For example, Vassileva also includes an allegation that she and John Ellis (also an FE II, male, age 66, national origin unknown) were eligible to interview for a FE V position in 2016. Vassileva does not allege, however, that, for example, Ellis was eligible to interview for the FE V or FE IV position and she was not. PSOAF ¶ 18; *Vassileva*, 2019 WL 5085717, at *5 (listing John Ellis' age as 66).

2016—when she was female, over 40, and Bulgarian—counsels against any inference that Wise's decision later finding her ineligible in 2018 was based on any discrimination based upon those characteristics. In any event, the City's referral list created by Wise confirmed that each applicant that was an FE II at the time of their application, including similarly situated employees outside of Vassileva's protected classes, including FE II Maruja Yoshimura (female, 30 years old, unknown national origin), and FE II Ethan Baugley (male, 28 years old, unknown national origin), were all deemed ineligible because each of their applications did not meet the required minimum qualifications. *Id.* ¶ 20.

Moreover, even if Vassileva could establish she was qualified for the position, Vassileva has not adduced evidence that the individual selected for the role had the same or lesser qualifications than she did, and for this independent reason her claim fails. *Outley*, 354 F. Supp. 3d at 863. It is undisputed that the employee selected to fill the vacancy, Wroblewski, who is older than Vassileva, and a male with unknown national origin, was an FE IV since 2015, had worked as an FE III for nearly 17 years before that, and had more seniority than Vassileva based on his hire date. Pl.'s Resp. DSOF ¶¶ 2, 27. FE IVs also had supervisory responsibility over lower FE positions. DSOF ¶ 13. Vassileva has not argued, much less produced evidence, that she had greater qualifications than Wroblewski, just that had she been placed on the referral list, she would have been second most senior to Wroblewski. Pl.'s Resp. DSOF ¶ 39. Yet Vassileva admits Wroblewski was selected to fill the one available vacancy, conceding there was no second vacancy. *Id.* ¶ 27.

Thus, Vassileva's failure to promote claim based on the FE V position in 2018 fails.

### b. Failure to Promote (FE IV – 2019)

The City next argues, as a threshold matter, that Vassileva's failure to promote claim for the FE IV position in 2019 was not administratively exhausted. Memo. Summ. J. at 12. Specifically, Vassileva filed her IDHR charge on June 18, 2018, the year *before* this promotion attempt in 2019, and it is not therefore included in her allegations in that 2018 IDHR charge attached to her FAC. Pl.'s Resp. DSOF ¶ 71. That charge did not (and could not have) included this allegation from the following year. *See id.* For discrete acts of an employer such as a failure to promote, Vassileva was required to file a timely charge with an administrative agency. *EEOC National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

Vassileva fails to respond to this argument in her Response. The Court agrees with the City that "[f]ailure to respond to an argument … results in waiver." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Therefore, Vassileva has waived any argument in opposition. Vassileva's failure to respond, however, is of no matter, because ultimately it is the City's burden of proof to establish it is entitled to judgment as a matter of law on this failure to promote claim.

The Court finds the City has met its burden. There is no evidence in the record that Vassileva filed any charge with any administrative agency regarding the 2019 failure to promote claim. Since failure to promote is a discrete act, Vassileva was required to file a charge with an administrative agency regarding that act prior to

filing any lawsuit on that basis. *EEOC National R.R. Passenger Corp.*, 536 U.S. at 114 (finding only acts occurring 300 days before the filing of a charge were actionable). Accordingly, the Court finds that Vassileva's failure to promote claim for the FE IV position in 2019 was not administratively exhausted, and thus is not properly before this Court.

### c. Denial of FE III Acting Up Opportunities (March 2018 – January 2019)

As discussed in Section II(c), *supra*, this claim is derivative of Vassileva's pending, remaining claim in *Vassileva I* that the City's decision denying her Acting Up in February 2018 was discrimination based on her national origin, sex, or age. To evaluate this claim, the Court would necessarily need to examine the circumstances of the City's denial of Vassileva's FE III Acting Up eligibility (e.g., there is no occasion to examine denial of Acting Up opportunities *unless* Vassileva was deemed eligible for those opportunities in the first place, which she was not, and which she is contesting in *Vassileva I*). That issue is before Judge Guzman, and this Court declines to consider it again in this case in violation of claim splitting principles.[10] *See Scholz*, 18 F.4th at 951.

That leaves the Court with Vassileva's allegation that the City should have returned her to the FE III Acting Up rotation schedule before January 2019. Resp. at

---

[10]Further, if Vassileva is successful in *Vassileva I*, she would be entitled to seek to recover damages relating to the denial of Acting Up in February 2018, as detailed in the *Vassileva I* court's minute entry dated October 25, 2021: "The only evidence Plaintiff may seek to admit regarding lost wages is that attributable to Defendant's alleged failure to allow Plaintiff to act up in 2018." Case No. 18-cv-04595, R. 104. Thus, denial of this claim does not prejudice Vassileva.

11–12. Vassileva alleges there was a 90-day rotation but has not cited any record evidence to support this contention except her own Declaration. The Court finds Vassileva lacks a foundation to offer this contention. PSOAF ¶ 33. Vassileva does not identify any evidence to support this allegation despite her personal belief that she should have been reconsidered; she even cites to the Declaration of Babapour wherein he affirmed that "BWM used the list created in April 2018 of FEs who were eligible to act up FEs until January 2019" and the Declaration of Salinas where he affirmed "[a]fter determining which FE IIs could act up as FE IIIs as needed in February 2018, I did not review acting up eligibility for FEs again until December 2018." PSOAF ¶ 33; R. 85-11, Babapour Decl. ¶ 14; R. 85-8, Salinas Decl. ¶ 21. Thus, the admissible record evidence Vassileva does cite to supports the City's position that no one was re-evaluated to Act Up as an FE III during this period. *Id.* Further, it is undisputed that Acting Up requests could be submitted on an annual basis. Pl.'s Resp. DSOF ¶ 42.

That the City did not treat Vassileva differently to reconsider her Acting Up on a different timeline than all other City employees is not evidence of discrimination, it is evidence of treating employees the same. In fact, Vassileva has not identified anyone that was reconsidered for Acting Up as an FE III (or otherwise) in the March 2018–January 2019 timeframe, conceding that the April 2018 list was used until January 2019, and admits she was eventually re-assessed, deemed eligible, and began Acting Up as an FE III in January 2019. *See* Pl.'s Resp. DSOF ¶¶ 45-46. Thus, Vassileva has failed to identify any similarly situated employees who were treated

differently for purposes of this claim, and Vassileva has not alleged discrimination based on national origin, sex, or age in connection with this claim, either.

### d. Denial of FE III Overtime (March 2018–Present)

As discussed in Section II(c), *supra*, this claim is also derivative of Vassileva's pending, remaining claim in *Vassileva I*, and barred by claim splitting. *Scholz*, 18 F.4th at 951. Further, as the City argues and supports, Vassileva did not identify any days after she was deemed eligible to Act Up in January 2019 that she alleges she was unfairly denied overtime. DSOF ¶ 52. Therefore, there is no independent claim for overtime outside of the City's decision that she was ineligible to Act Up as an FE III in February 2018. *See id.*

As the City points out, Vassileva has failed to respond to the City's argument regarding her overtime claim and has waived any argument. Reply at 15; *see Bonte*, 624 F.3d at 466. Waiver aside, ultimately it is the City's burden of proof to establish it is entitled to judgment as a matter of law on this overtime claim. The Court agrees with the City. For one, any purported overtime claim relating to the City's decision not to allow Vassileva to Act Up as an FE III in February 2018 is a claim being litigated in *Vassileva I.* Two, the Court finds that Vassileva has not adduced evidence of any overtime claims unrelated to the decision of the City not to allow her to Act Up as an FE III in February 2018, and for this reason this claim also fails.

### e. Written Reprimand (June 2018)

A written reprimand, standing alone, does not automatically constitute an adverse action. *See Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998) ("Absent some

tangible job consequence accompanying [an employer's] reprimands, we decline to broaden the definition of adverse employment action to include them."); *Oest v. Illinois Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001) (oral and written reprimands on their own are not adverse employment actions), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016); *see also Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). Vassileva proffers no evidence showing that the June 6, 2018 written reprimand resulted in a "tangible job consequence," such as a reduction in pay or benefits. *Sweeney*, 149 F.3d at 556. Thus, the written reprimand is not a materially adverse action, and Vassileva's claim on this basis fails.

For these reasons, the Court grants summary judgment on Count II.

**B. Retaliation Under Title VII (Count I)**

"To make out a *prima facie* case for retaliation under Title VII, a plaintiff must show that a reasonable jury could find that (1) [she] engaged in statutorily protected activity; (2) [her] employer took a materially adverse action against [her]; and (3) the adverse action was caused by the protected activity." *Miller v. Chi. Transit Auth.*, 20 F.4th 1148, 1155 (7th Cir. 2021) (internal citation omitted). If a plaintiff establishes a prima facie case of retaliation, the Court then engages in the *McDonnell Douglas* burden-shifting analysis. *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020).

Before turning to the merits of Vassileva's retaliation claim, the Court notes that Vassileva agrees with the City that the purported retaliation claim pending in this matter relates to her filing IDHR charges and *Vassileva I*. Pl.'s Resp. DSOF ¶ 78.

The relevant IDHR charge is the one Vassileva attached to her First Amended Complaint, which was filed in June 2018. The City admits that Vassileva filing IDHR charges, and filing *Vassileva I*, is protected activity. Memo. Summ. J. at 19. The City argues instead that Vassileva cannot establish causation between the protected activity and the actions she purports are adverse employment actions. *Id*. Surprisingly, in her Response, Vassileva does not substantively respond to the City's arguments regarding retaliation and has therefore waived any argument. *See Bonte*, 624 F.3d at 466. But again, Vassileva's failure to respond is of no import because ultimately it is the City's burden of proof to establish it is entitled to judgment as a matter of law on her retaliation claim.

The City has again met its burden. Specifically, as the Court has discussed, the City has argued and established that (i) Vassileva was not qualified for the FE V position; (ii) Wise, as decisionmaker, was not aware of Vassileva's protected activity when he made the decision to exclude her from the bid list for the FE V position; (iii) Vassileva has not adduced any evidence of retaliatory animus with respect to the City deeming her ineligible to bid for the FE IV position; (iii) Salinas was not aware of Vassileva's protected activity until after she filed *Vassileva I*, which occurred after the written reprimand was issued on June 6, 2018; and (iv) the City did not evaluate *any employee* for Acting Up eligibility after February 2018 until January 2019. Memo. Summ. J. at 19–20; Reply at 20–22. These findings undercut, fatally, Vassileva's retaliation claim. Finally, a written reprimand is not – on its own – sufficient to

establish a materially adverse action, as discussed in Section A(e), *supra*, and Vassileva failed to adduce any evidence to suggest it was a materially adverse action.

For these reasons, the Court also grants summary judgment on Count I.

## Conclusion

For the foregoing reasons, the City's motion for summary judgment [83] is granted. Civil case terminated.

Dated: March 14, 2022

United States District Judge
Franklin U. Valderrama